Hardin, P. J.
I think, upon the authority of Varick v. Smith (9 Paige, 547), and upon the opinion of Mr. Justice Her win,* delivered at the circuit, the judgment should be affirmed, with costs.
In Crill v. The City of Rome (47 How., 398), the Varick Case was referred to and followed. All that was involved in Crill v. Rome (supra), was the right to the waters of the Mohawk river, and the conclusion was that the state “has the proprietorship of the waters of the Mohawk river,” and it was said in the opinion that “between individuals the rule would be otherwise.”
Crill v. The City of Rome was affirmed by the general term of the fourth department, and so far as it bears upon the question here presented, it is not adverse to the respondents. See also Smith v. The City of Rochester, 92 N. Y., 463; also Albany Law Jour. (vol. 36), p. 307, and cases there cited.
Judgment affirmed, with costs.
Follett, J., and Martin, J., concur.

 Merwin, J.—Within the rule laid down in Randall v. Sanders (23 Hun, 611, 615), I think the plaintiffs can maintain the action of trespass, provided the title of the property is in them. Neither party had the actual occupation, so t at the possession could follow the title.
I do not think the evidence of identity is sufficient to enable the plaintiffs to get any benefit from the deed of the comptroller to Hinman, of date of December 19. 1850 The plaintiffs’ ights therefore, if any, must he derived from the patent to George Scriba, December 12 1794
The place of the trespass complained ot is an island in the Oswego nver. If Scriba’s patent carried the title ..to the center of the river, then irom the evi. *210 dence I assume that the island in question was included, at least so far as the' trespass is concerned.
That patent included a large quantity of land eastward of the Oswego river.' The description begins at Canada creek; thence by various courses and distances to the mouth of Salmon river; thence up along the shore of Lake Ontario to the mouth of Oswego or Onondaga river, where it empties into said lake; thence up along said river to a tract of two hundred acres of land granted to John Taylor; * * thence along the northeast and south bounds thereof to the said Oswego and Onondaga river; thence up along said river; * * thence along the north and south bounds of a tract granted to Barnes-J. Staats to the outlet of Oneida lake; thence up along the northerly shore thereof to the mouth of Wood creek; thence up along the same to the mouth of said Canada creek; thence up the same to the place of beginning. The island is between the mouth of the river and the Taylor tract, and the description as to that boundary is to the mouth of the Oswego rive r; thence up along, said river. This expression would ordinarily carry the title to the middle of the stream.
The position of the defendant’s counsel is that the Oswego river was a navigable river, and that therefore grants bounded on it do not convey the bed of the river or the islands therein.
There is no distinct evidence that the Oswego river, in 1794, was in fact a navigable river. It perhaps may be inferred, assuming that, the question then is how should the deed be construed?
In Varick v, Smith (9 Paige, 547), patent granted in 1790, bounded generally on this river, was held to carry title to the center of the stream, subject to the rights of the public to navigate the water in such parts as are navigable, and incidentally in that case it is said that the line in Scriba’s patent goes to the-center of the stream.
The case of People ex rel. Loomis v. Canal Appraisers (33 N. Y., 461) is relied on by defendant’s counsel. It was there held that a person claiming under a patent running to the Mohawk river and thence down the stream thereof, was. not entitled to rec ;ver of the state damages l'or the diversion of the waters of that river at that place for the benefit of the Erie canal. The locality was Little' Falls. The date of the patent does not appear, but presumably it was before. 1700.
It was held in that case by Judge Davies, who gave the opinion, that the title of the bed of the Mohawk riwr was in the state.
He assumed to follow the case of Canal Appraisers v. Ti bitts (17 Wend., 571. That case, as I read it, only decided that the state had the right to use for all public purposes in derogation of individual rights the waters of rivers navigable in fact.
The query is whether in the case in (33 N. Y.), it was necessary to decide the question where the title in fee of the river was.
It is said that a river is in fact navigable on which boats,lighters or rafts may be floated to market. Smith, J., in Morgan v. King (35 N. Y , 458, and cases cited. Does the title of the bed of every such river remain in the state when the patent from the state happens to be bounded upon it generally ? I don’t believe that the case in the (33 N. Y.), will be held as sustaining any such doctrine. The status of the Mohawk river was adjudicated upon in view of the-peculiar legislation and acts of the state in regard to it, and the situation in-fact of the river itself.
It does not follow that every navigable river should have the same rule applied to it.
The present case depends, I think, on the construction of the terms of the Scriba patent.
Undoubtedly there was power in the state to convey to the center of the-river, subject of course to the public use of the waters for the purposes of" navigation. Has it done so? The description, after proceeding along the shore of Lake Ontario, then proceeds up along the river. The limit of the shore is dropped. So after proceeding around an excepted piece it comes back to the river and thence up along the same, the distinction of shore not being' again referred to till the Oneida lake is reached. If it was designed to limit the line to the shore of Oswego river, would it- not have been so expressed?
, Having in view the situation at the date of. the patent, its fair construction, it *211 seems to me is that the center of the river was intended as the boundary line. Ño prior act of the slate is shown indicating an intention to hold the.bed of the river, or the islands, as state property. l'or aught that appears the patent .is to be construed the same as the deed of an individual in like terms, ticriba in 1814 gave a mortgage which is a link of plaintili’s chain of title. The description in this mortgage commences at a stake standing on the bank of the Oswego river; thence it proceeded inland on divers courses and back to the bank of the Oswego river; and thence southerly up the said river the several courses thereof to the place of beginning.” This description would take to the center of the river, provided the mortgagee owned so far. Walworth, Chancellor, in Child v. Starr, 4 Hill, 375; 8 Wash. on Real Property, 437 and 449 and note.
It is, therefore, my opinion that the title under the Scriba patent went to the centre of Oswego river. It follows the plaintiffs are entitled to recover, and their damages 1 fix upon the evidence at the sum of fifty dollars.
The plaintifE’s attorney will prepare findings in accordance with this opinion and submit them with a copy of the opinion to the defendant’s counsel, who will if he chooses prepare amendments and further findings, and then all; may be sent to me.